1  I. NEEL CHATTERJEE (STATE BAR NO. 173985)
   nchatterjee@goodwinlaw.com
2  MONTÉ M.F. COOPER (STATE BAR NO. 196746)
   mcooper@goodwinlaw.com
3  ANDREW S. ONG (STATE BAR NO. 267889)
   aong@goodwinlaw.com
4  DANIEL R. MELLO JR. (STATE BAR NO. 325714)
   dmello@goodwinlaw.com
5  GOODWIN PROCTER LLP
   601 Marshall Street
6  Redwood City, California  94063
   Telephone:      +1-650-752-3100
7  Facsimile:      +1-650-853-1038

8  RACHEL M. WALSH (STATE BAR NO. 250568)
   rwalsh@goodwinlaw.com
9  GOODWIN PROCTER LLP
   Three Embarcadero Center, 28th Floor
10 San Francisco, California  94111
   Telephone:      +1-415-733-6000
11 Facsimile:      +1-415-677-9041

12 Attorneys for Plaintiff
   MOBILEIRON, INC.

13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                    SAN FRANCISCO DIVISION

17

18 MOBILEIRON, INC., a Delaware corporation,      Case No. 3:20-cv-02877-JCS

19                 Plaintiffs,                     **FIRST AMENDED COMPLAINT FOR
                                                   PATENT INFRINGEMENT,**
20         v.                                      **ATTEMPTED EXTORTION,
                                                   VIOLATION OF CALIFORNIA**
21 BLACKBERRY CORPORATION, a Delaware             **BUSINESS AND PROFESSIONS CODE §
   corporation, BLACKBERRY LTD., a                17200, AND DECLARATORY RELIEF OF
22 Canadian company, and DOES 1-50,               NON-INFRINGEMENT, UNCLEAN
                                                   HANDS AND PATENT MISUSE**
23                 Defendants.
                                                   **DEMAND FOR JURY TRIAL**
24

25

26

27

28

Plaintiff MobileIron, Inc. ("MobileIron") alleges as follows:

**BACKGROUND**

1.      This is an action to stop the unlawful activities of Blackberry Corporation and BlackBerry Ltd. (collectively, "the Blackberry Defendants").  The Blackberry Defendants built a technology made obsolete.  Due to Blackberry's shrinking presence in the marketplace, it decided to shake companies down by making countless meritless patent assertions to generate licensing revenue instead of competing in the marketplace.  The Blackberry Defendants have largely become dependent on licensing revenue by seeking portfolio licenses that include patents they know are statutorily surrendered and by asserting infringement theories through unlawful notice letters that would not pass muster in any court of law and extracting extortionate license fees as it tries to rebuild its company on the backs of other companies' technologies.  MobileIron is the latest target of Blackberry's unlawful strategy.

2.      MobileIron, a software company founded in 2007, is a pioneer in enterprise management of mobile security and management for smartphones and tablet computers, such as Apple's iPhone and Samsung's Galaxy Android devices.  MobileIron's award-winning and industry-leading Unified Endpoint Management ("UEM") platform includes passwordless zero sign-on ("ZSO"), multi-factor authentication ("MFA"), and mobile threat defense ("MTD") capabilities.  Together they validate the device, establish user context, check app authorization, verify the network, and detect and remediate threats before granting secure access to a device or user.  The result is a seamless, secure user experience that automates access control decisions to ensure that only authorized users, devices, apps, and services can access business resources. MobileIron products and services include UEM, Access, Sentry, Mobile Threat Defense, and AppConnect.

3.      Blackberry uses revenue derived from its shakedowns to try to reinvent itself and to rebuild its company by taking the pioneering inventions of MobileIron.  Blackberry offers products and services with the names "Blackberry Intelligent Security," "Enterprise Mobility Suite" (which includes a UEM service), "Enterprise BRIDGE," and "QNX CAR Platform for Infotainment."  All of these products and services infringe MobileIron's patents, as set forth

1

1  herein.

2                              **THE PARTIES**

3        4.       MobileIron is a corporation organized and existing under the laws of the State of

4  Delaware, with its principal place of business at 490 East Middlefield Road, Mountain View,

5  California 94043.

6        5.       Upon information and belief, Defendant BlackBerry Corporation is a corporation

7  organized and existing under the law of the State of Delaware, with its principal place of business

8  at 5000 Riverside Drive, Suite 100E, Irving, Texas 75039.  On information and belief, Blackberry

9  maintains offices in this district at 331 Fairchild Drive, Mountain View, CA 94024 and 3001

10 Bishop Drive #400, San Ramon, CA 94583.

11       6.       Upon information and belief, Defendant BlackBerry Ltd. is a company organized

12 and existing under the laws of the country of Canada, with its principal place of business at 2200

13 University Avenue East, Waterloo, Ontario, Canada, N2K 0A7.  Upon information and belief, in

14 2015, Blackberry Limited acquired for $425 million in cash Good Technology Corporation

15 ("Good Technology"), a company whose headquarters are located at 430 North Mary Avenue,

16 Suite 200, Sunnyvale, California 94085.  Upon information and belief, BlackBerry Ltd. continues

17 to operate Good Technology as a wholly owned subsidiary of BlackBerry Ltd.  BlackBerry Ltd.

18 derives a substantial proportion of its revenue from intellectual property licensing based on a

19 portfolio that BlackBerry has stated publicly consists of approximately 38,000 patents and

20 applications worldwide.

21       7.       MobileIron owns all right, title, and interest in, and has standing to sue for patent

22 infringement of United States Patent No. 8,359,016 ("the '016 patent"), entitled "Management of

23 Mobile Applications," issued January 22, 2013.  A true and accurate copy of the '016 patent is

24 attached to this Complaint as Exhibit A.

25       8.       MobileIron owns all right, title, and interest in, and has standing to sue for patent

26 infringement of United States Patent No. 9,426,120 ("the '120 patent"), entitled "Location and

27 Time Based Mobile App Policies," issued August 23, 2016.  A true and accurate copy of the '120

28 patent is attached to this Complaint as Exhibit B.

2

9.      MobileIron owns all right, title, and interest in, and has standing to sue for patent infringement of United States Patent No. 8,869,307 ("the '307 patent"), entitled "Mobile Posture-Based Policy, Remediation and Access Control for Enterprise Resources," issued October 21, 2014.  A true and accurate copy of the '307 patent is attached to this Complaint as Exhibit C.

10.      MobileIron owns all right, title, and interest in, and has standing to sue for patent infringement of United States Patent No. 10,038,598 ("the '598 patent"), entitled "Leveraging and Extending Mobile Operating System MDM Protocol," issued July 31, 2018.  A true and accurate copy of the '598 patent is attached to this Complaint as Exhibit D.

11.      Defendants BlackBerry Corporation and/or BlackBerry Ltd. purport to be the owner, assignee, and/or exclusive licensee of, and purport to have all right, title and interest in, and standing to sue for patent infringement of, each of U.S. Patent Nos. 8,005,469 ("the '469 patent"); 8,544,084 ("the '084 patent"); 9,282,099 ("the '099 patent"); RE44,746 ("the Reissue '746 patent"); 8,442,489 ("the '489 patent"); 9,270,682 ("the '682 patent"); 7,372,961 ("the '961 patent"); 8,931,045 ("the '045 patent"); 8,554,175 ("the '175 patent"); and 9,077,769 ("the '769 patent").

## JURISDICTION AND VENUE

12.      This action involves claims for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, and claims for declaratory relief arising under the Declaratory Judgment Act, Title 28 of the United States Code.  This action also involves California state law claims for attempted extortion and for violation of California Business & Professions Code section 17200.

13.      This Court has subject matter jurisdiction over MobileIron's claims for infringement against Defendants pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, because the claims arise under the patent laws of the United States.

14.      This Court has subject matter jurisdiction under the Declaratory Judgment Act and the patent laws of the United States, more particularly under Title 28 U.S.C. §§ 2201 and 2202 and Title 35 U.S.C. §§ 100 et. seq., respectively, with respect to Plaintiff MobileIron's claims for declaratory relief with respect to patents owned, assigned, and or exclusively licensed to

Defendants.

15.     This Court has supplemental jurisdiction over MobileIron's state law claims pursuant to 28 U.S.C. § 1367(a) because such claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

16.     This Court has personal jurisdiction over the BlackBerry Defendants for purposes of MobileIron's claims for patent infringement because both Defendants transact business in the State of California and have, at a minimum, offered to provide and/or provided in this judicial district and throughout the State of California products and services that infringe claims of the '016, '120, '307 and '598 patents.

17.     This Court has personal jurisdiction over the BlackBerry Defendants for purposes of MobileIron's claims for declaratory relief because the BlackBerry Defendants have accused MobileIron of providing products and services that the BlackBerry Defendants allege infringe on or more claims of each of the '084, '099, Reissue '746, '489, '682, '961, '045, '175, and '769 patents as well as 32 other patents.

18.     A true and accurate copy of correspondence dated August 26, 2019, in which counsel for BlackBerry Corporation purports to put MobileIron on notice of infringing each of the '469, '084, '099, Reissue '746, '489, '682, '961, '045, '175, and '769 patents, is attached hereto as Exhibit E.  A true and accurate copy of correspondence dated March 9, 2020, in which counsel for BlackBerry Corporation again purported to put MobileIron on notice of infringing each of the '469, '084, '099, Reissue '746, '489, '682, '961, '045, '175, and '769 patents, as well as 32 other patents, is attached hereto as Exhibit F.  In each instance, BlackBerry provided no claim chart or explanation accompanying the letter.  In fact, at least one of the patents identified in the letters was either surrendered and/or unenforceable as a matter of law.  BlackBerry touted the size and breadth of its portfolio in the August 26, 2019 letter, and also stated that the identified patents were "merely illustrative examples" of patents relevant to MobileIron's business and products and that the listed patents were "not intended to convey the totality of the relevant patents" in BlackBerry's portfolio.  The March 9, 2020 letter from BlackBerry repeated similar language.

19.     Based on the acts, conduct and statements of the BlackBerry Defendants, there

4

1    exists an actual and substantial controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202,

2    between MobileIron and the BlackBerry Defendants, as to whether MobileIron or any of the

3    products and services sold and/or offered for sale by MobileIron have infringed, or continue to

4    infringe, any of the claims of the '469, '084, '099, Reissue '746, '489, '682, '961, '045, '175, and

5    '769 patents.   The existing controversy is of sufficient immediacy and reality to warrant the

6    issuance of a declaratory judgment of non-infringement, as set forth further herein.

7        20.    Venue in this district is proper under 28 U.S.C. § 1391 and 1400(b).

8                                **COUNT I**

9                **(Infringement of U.S. Patent No. 8,359,016)**

10       21.    MobileIron incorporates by reference the allegations set forth in paragraphs 1

11   through 20 of this Complaint as though set forth in full herein.

12       22.    The BlackBerry Defendants and their customers have infringed the claims,

13   directly, indirectly, and/or via the doctrine of equivalents, including at least claim 1, of the '016

14   patent through, among other activities, the sale, the offering for sale, the making, the having

15   made, the use, the importation and the exportation of BlackBerry Enterprise Mobility Suite:

16   Unified Endpoint Management ("UEM").

17       23.    Upon information and belief, the BlackBerry Defendants' UEM employs a method

18   comprising, responsive to a request for a set of applications available for installation on a mobile

19   device, accessing a user profile and a mobile device profile against an identifier associated with a

20   user.  In particular, in describing UEM, the BlackBerry Defendants state:  "If a required app is not

21   installed, your administrator may restrict or remove access to work data.  Optional apps are apps

22   that your administrator recommends but you are not required to install them on your device."

23   BlackBerry UEM Client for iOS, User Guide at 5.  The BlackBerry Defendants add:  "1.  In the

24   BlackBerry UEM Client app, tap Assigned work apps.  2.  Tap the Required tab and install all

25   required apps.  3.  Tap the All tab and install any optional apps that you want."  *Id.*  Thus, via a

26   UEM client, a user can request applications available for installation on a mobile device.

27       24.    The BlackBerry Defendants further state:  "You can change whether an app is

28   required or optional.  The actions that occur when an app is set to required or optional depend on

the type of app, the device, and the activation type.  1.  On the menu bar, click User and Devices.  2.  If the app that you want to change is assigned to a user account, in the search results, click the name of a user account.  3.  If the app that you want to change is assigned to a group, in the left pane, click Groups to expand the list of user groups and click the name of the group.  4.  In the Groups assigned and user assigned apps section, click the disposition for the app that you want to change.  5.  In the Disposition drop-down list for the app, select Optional or Required.  6.  Click Assign."  BlackBerry UEM, Managing apps (v. 12.11) at 22.

25.     Thus, BlackBerry's documentation reflects that for managing apps as part of the UEM, an administrator can designate an app as required (or optional) based on:  (A) a user account or whether the user belongs to a particular group (i.e. based on a user profile); and/or (B) the type of the user device (i.e. the mobile device profile), where the two profiles are associated with a user identifier.

26.     Upon information and belief, the BlackBerry Defendants' UEM filters a catalog of applications based on a set of policies applied to the user profile and mobile device profile to select a set of applications.  The BlackBerry Defendants state:  "You can change whether an app is required or optional. The actions that occur when an app is set to required or optional depend on the type of app, the device, and the activation type.  7.  On the menu bar, click User and Devices.  8.  If the app that you want to change is assigned to a user account, in the search results, click the name of a user account.  9.  If the app that you want to change is assigned to a group, in the left pane, click Groups to expand the list of user groups and click the name of the group.  10. In the Groups assigned and user assigned apps section, click the disposition for the app that you want to change.  11.  In the Disposition drop-down list for the app, select Optional or Required. 12.  Click Assign."  BlackBerry UEM, Managing apps (v. 12.11) at 22.

27.     Thus, for managing apps as part of the UEM, an administrator can designate an app as required (or optional) based on: (A) a user account or whether the user belongs to a particular group (i.e. based on a user profile), and/or (B) the type of the user device (i.e. the mobile device profile).  As such, a catalog of applications is filtered based on a set of policies applied to the user profile and mobile device profile to select (i.e., designate) a set of applications

6

1    as required (or optional).

2        28.     Upon information and belief, the BlackBerry Defendants' UEM returns the set of

3    applications in response to the request.  The BlackBerry Defendants state:  "If a required app is

4    not installed, your administrator may restrict or remove access to work data. Optional apps are

5    apps that your administrator recommends but you are not required to install them on your device.

6    Before you begin: Activate your device  1.  In the BlackBerry UEM Client app, tap Assigned

7    work apps.  2.  Tap the Required tab and install all required apps.  3.  Tap the All tab and install

8    any optional apps that you want."  BlackBerry UEM Client for iOS, User Guide at 5.  Thus, for

9    example, in response to the user tapping the "Assigned work apps" and the "Required" tab, the

10   apps designated as required would be presented.

11       29.     Upon information and belief, the Blackberry Defendants' UEM provides the

12   returned set of applications to a mobile device application management interface configured to

13   display the set of applications to the user via the application management interface and to provide

14   the ability for the user to select, via the application management interface, one or more of the

15   displayed applications for installation on the mobile device.   The BlackBerry Defendants state:

16   "If a required app is not installed, your administrator may restrict or remove access to work data.

17   Optional apps are apps that your administrator recommends but you are not required to install

18   them on your device.  Before you begin:  Activate your device  1.  In the BlackBerry UEM Client

19   app, tap Assigned work apps.  2.  Tap the Required tab and install all required apps.  3.  Tap the

20   All tab and install any optional apps that you want."  BlackBerry UEM Client for iOS, User

21   Guide at 5.  Thus, after the required (or optional) apps are presented, the user may select one or

22   more required and/or optional apps via an application management interface of the UEM client

23   for installation on the mobile device.

24       30.     The BlackBerry Defendants advertise the QNX Car Platform as including security

25   capabilities permitting the use of a self-verifying file system to deny access to files that have

26   changed unexpectedly, filesystem encryption for protecting sensitive or private data, and fine-

27   grain control of system privileges.

28       31.     Upon information and belief, the BlackBerry QNX Car Platform incorporates

7

security features that include the BlackBerry Defendants' UEM, and also infringes at least claim 1 of the '016 patent.

32.     The BlackBerry Defendants' infringement of the '016 patent has injured and will continue to injure MobileIron unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further use of methods and systems that come within the scope of the '016 patent.

33.     Blackberry is aware of the '016 patent.  Plaintiff MobileIron previously asserted the '016 patent against Good Technology.  As a result of this litigation, a San Jose jury in August of 2015 found that the '016 patent was valid.

34.     Upon information and belief, the BlackBerry Defendants have had actual notice of, and actual knowledge of, the '016 patent since at least September 4, 2015, when BlackBerry Ltd. publicly announced its anticipated acquisition of Good Technology.

35.     The BlackBerry Defendants' UEM is advertised as being scalable up to 25,000 devices per server and 150,000 devices per domain, and can be deployed either on premise or within the Cloud. The Blackberry Defendants' UEM is not a staple article or a commodity of commerce suitable for a non-infringing use of the '016 patent.  The BlackBerry Defendants' UEM is especially made for an infringing use of the '016 patent, and in combination with BlackBerry Defendants' knowledge of the '016 patent and further knowledge that the BlackBerry Defendants' customers infringe the '016 patent when they implement the UEM on their mobile devices, the BlackBerry Defendants are contributory infringers of the '016 patent.

36.     The BlackBerry Defendants have been and are aware that the normal and customary use of the BlackBerry Defendants' UEM will infringe the '016 patent.  The BlackBerry Defendants, through the dissemination of technical and product literature, online instruction, advertising, and customer support regarding the BlackBerry Defendants' UEM, intentionally encourage their customers to infringe the '016 patent.  The BlackBerry Defendants therefore are liable for induced infringement of the '016 patent.

37.     The Blackberry Defendants' infringement of the '016 patent has been and continues to be willful and deliberate as the BlackBerry Defendants have acted in an objectively

1   reckless manner in view of the high likelihood that their acts constituted infringement of the '016

2   patent, and with full knowledge of MobileIron's rights in the '016 patent.

3        38.    For the reasons stated herein, MobileIron is entitled to enhanced damages pursuant

4   to 35 U.S.C. § 284, and attorneys' fees and costs pursuant to 35 U.S.C. § 285.

5        39.    Upon information and belief, the license between MobileIron and Good

6   Technology does not cover at least some, if not all, of the BlackBerry Defendants' UEM.

**COUNT II**

**(Infringement of U.S. Patent No. 9,426,120)**

9        40.    MobileIron incorporates by reference the allegations set forth in paragraphs 1

10  through 39 of this Complaint as though set forth in full herein.

11       41.    The BlackBerry Defendants and their customers have infringed the claims,

12  directly, indirectly, and/or via the doctrine of equivalents, including at least claim 1, of the '120

13  patent, through, among other activities, the sale, the offering for sale, the making, the having

14  made, the use, the importation and the exportation of the BlackBerry Defendants' Intelligent

15  Security ("IS") services and products.

16       42.    Upon information and belief, the BlackBerry Defendants' IS provides a method

17  that comprises receiving, at a management agent on a device from a remote enterprise server, one

18  or more location and time policies that include policy information, wherein the one or more

19  location and time policies are calculated by processing user and group information, wherein the

20  device includes applications located inside an enterprise zone and applications located outside of

21  the enterprise zone.  The BlackBerry Defendants state in describing features of Intelligent

22  Security (IS):  "Adaptive Policy: Regional Bank Manager -- Anne enters a retail branch.  Anne is

23  the regional manager for a major retail bank. With BlackBerry Persona, when she enters a retail

24  branch, her presence is detected based on her mobile device's geolocation. Her access to

25  privileged apps appropriate for her role  is automatically enabled upon her arrival. When she

26  leaves, that access is disabled."[1]

27

28  [1] https://www.blackberry.com/us/en/products/blackberry-persona#industry-focus (last visited Apr. 22, 2020).

9

43.     Thus, upon information and belief, to allow access to privileged apps when the user enters a retail branch, an agent on the user device receives location and time policies from a remote BlackBerry server.  Moreover, upon information and belief the user device employing the BlackBerry Defendants' IS calculates or evaluates the policy using user and group information (that the user location is at the branch and that the user belongs to the group of managers).  In addition, upon information and belief, the user device employing the BlackBerry Defendants' IS includes privileged apps, i.e., applications located inside an enterprise zone, and the user device also includes apps that are generally installed on mobile devices such as a calculator, a notepad, a music player, etc., i.e., applications located outside of the enterprise zone.

44.     Upon information and belief, the BlackBerry Defendants' IS updates the policy information in a bus with a current allowed state.  Upon information and belief, the BlackBerry Defendants' IS server updates the policies and transmits the updated policies to the user devices from time-to-time.

45.     Upon information and belief, the BlackBerry Defendants' IS receives location information from the device, wherein the location information includes a new location that is not an allowed location.  The BlackBerry Defendants state: "When she leaves, that access [to the privileged apps] is disabled."[2]

46.     Thus, upon information and belief, a software module (management agent) on the user device employing the BlackBerry Defendants' IS receives new location information and determines that the new location is not an allowed location.

47.     Upon information and belief, the BlackBerry Defendants' IS blocks, by the management agent, a user of the device from using an application located in the enterprise zone on the device based at least in part on the received location information, wherein the management agent blocks the user of the all applications within the enterprise zone according to the one or more policies. The BlackBerry Defendants further state: "When she leaves, that access [to the

---

[2] https://www.blackberry.com/us/en/products/blackberry-persona#industry-focus (last visited Apr. 22, 2020).

privileged apps] is disabled."[3]

48.     Thus, upon information and belief, the software module (management agent) on the user device utilizing the BlackBerry Defendants' IS blocks the user device from using the privileged apps, i.e., one or more applications in the enterprise zone, and the decision to block is based on, at least in part, the received location information.  Upon information and belief, the software module (management agent) blocks the use by the user of all of the privileged apps, i.e., all applications with the enterprise zone, as dictated by the received policies.

49.     The BlackBerry Defendants advertise that the QNX Car Platform includes security capabilities permitting the use of a self-verifying file system to deny access to files that have changed unexpectedly, filesystem encryption for protecting sensitive or private data, and fine-grain control of system privileges.

50.     Upon information and belief, the BlackBerry QNX Car Platform incorporates security features that include the BlackBerry Defendants' IS, and also infringes at least claim 1 of the '120 patent.

51.     The BlackBerry Defendants' infringement of the '120 patent has injured and will continue to injure MobileIron unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further use of methods and systems that come within the scope of the '120 patent.

52.     The BlackBerry Defendants' IS is advertised as being a cloud service that can dynamically adapt the security requirements and behavior of a customer's users' devices and work apps to their real-world contexts. The Blackberry Defendants' IS is not a staple article or a commodity of commerce suitable for a non-infringing use of the '120 patent.  The BlackBerry Defendants' IS is especially made for an infringing use of the '120 patent, and in combination with BlackBerry Defendants' knowledge of the '120 patent and further knowledge that the BlackBerry Defendants' customers infringe the '120 patent when they implement the IS in their mobile systems, the BlackBerry Defendants are contributory infringers of the '120 patent.

---

[3] https://www.blackberry.com/us/en/products/blackberry-persona#industry-focus (last visited Apr. 22, 2020).

53.     The BlackBerry Defendants have been and are aware that the normal and customary use of the BlackBerry Defendants' IS will infringe the '120 patent.  The BlackBerry Defendants, through the dissemination of technical and product literature, online instruction, advertising, and customer support regarding the BlackBerry Defendants' IS, intentionally encourage the BlackBerry Defendants' customers to infringe the '120 patent.  The BlackBerry Defendants therefore are liable for induced infringement of the '120 patent.

54.     The Blackberry Defendants' infringement of the '120 patent has been and continues to be willful and deliberate as the BlackBerry Defendants have acted in an objectively reckless manner in view of the high likelihood that their acts constituted infringement of the '120 patent, and with full knowledge of MobileIron's rights in the '120 patent.

55.     For the reasons stated herein, MobileIron is entitled to enhanced damages pursuant to 35 U.S.C. § 284, and attorneys' fees and costs pursuant to 35 U.S.C. § 285.

## COUNT III

## (Infringement of U.S. Patent No. 8,869,307)

56.     MobileIron incorporates by reference the allegations set forth in paragraphs 1 through 55 of this Complaint as though set forth in full herein.

57.     The BlackBerry Defendants and their customers have infringed the claims, directly, indirectly, and/or via the doctrine of equivalents, including at least claim 1, of the '307 patent, through, among other activities, the sale, the offering for sale, the making, the having made the use, the importation and the exportation of the BlackBerry Defendants' UEM.

58.     Upon information and belief, the BlackBerry Defendants' UEM includes a computer-implemented method, comprising receiving, from a control agent installed on a mobile device, a list that includes one or more applications currently installed on the mobile device.  The BlackBerry Defendants in describing UEM state:  "To help prevent users from installing specific apps, you can create a list of restricted apps and use compliance profiles to enforce the restrictions.  For example, you might want to prevent users from installing malicious apps or apps that require a lot of resources."  BlackBerry UEM, Managing apps (v. 12.11) at 20.  The BlackBerry Defendants further state in reference to UEM:  "For iOS and Android devices, you

12

can create a compliance profile to select apps from the restricted app list and set an enforcement

action such as prompting the user or deleting work data if one of these apps is installed." *Id*.

59.     Accordingly, upon information and belief, in order to determine that a restricted

app is installed, a software module (control agent) installed on a mobile device employing the

BlackBerry Defendants' UEM receives a list of applications currently installed on the mobile

device.

60.     Upon information and belief, the BlackBerry Defendants' UEM detects, based at

least in part on the list, an installation of at least one new application on the mobile device.  The

BlackBerry Defendants state in conjunction with UEM:  "For iOS and Android devices, you can

create a compliance profile to select apps from the restricted app list and set an enforcement

action such as prompting the user or deleting work data if one of these apps is installed."

BlackBerry UEM, Managing apps (v. 12.11) at 20.  Thus, upon information and belief, using the

list of applications installed on the mobile device, the BlackBerry Defendants' UEM determines

that a restricted app is newly installed on the mobile device.

61.     Upon information and belief, the BlackBerry Defendants' UEM determines, in

response to the detection of the installation of the new application, whether the new application is

authorized to be installed on the mobile device based at least in part on one or more policies that

indicate whether the new application is a recognized application.  The BlackBerry Defendants

state:  "For iOS and Android devices, you can create a compliance profile to select apps from the

restricted app list and set an enforcement action such as prompting the user or deleting work data

if one of these apps is installed."  BlackBerry UEM, Managing apps (v. 12.11) at 20.  Thus, upon

information and belief, from the list of applications installed on the mobile device that employs

the BlackBerry Defendants' UEM, it is determined whether a newly installed application is

authorized to be installed on the mobile device based on, at least in part, a compliance profile, i.e.,

one or more policies that indicate whether the new application is a recognized application, i.e.,

not a restricted application.

62.     Upon information and belief, in the event that the installation of the new

application is determined to be not authorized, the BlackBerry Defendants' UEM adjusts a state

of one or more mobile device data objects associated with the mobile device.  The BlackBerry Defendants in describing UEM state:  "For iOS and Android devices, you can create a compliance profile to select apps from the restricted app list and set an enforcement action such as prompting the user or deleting work data if one of these apps is installed."  BlackBerry UEM, Managing apps (v. 12.11) at 20.  Thus, upon information and belief, if the newly installed application is determined to be a restricted app, i.e., an application that is not authorized, an enforcement action is taken (state of one or more mobile device data objects would be adjusted) by the BlackBerry Defendants' UEM.

63.     Upon information and belief, the BlackBerry Defendants' UEM denies access by the mobile device to one or more network application services based at least in part on the adjusted state of the one or more mobile device data objects, wherein access is denied by blocking, at an intermediate node, traffic from the mobile device to the one or more network application services.  The BlackBerry Defendants, in describing UEM, state:  "For iOS and Android devices, you can create a compliance profile to select apps from the restricted app list and set an enforcement action such as prompting the user or deleting work data if one of these apps is installed."  BlackBerry UEM, Managing apps (v. 12.11) at 20.  Thus, upon information and belief, the user is prompted to uninstall the restricted app and, should the user use the restricted app regardless, as part of the enforcement action (i.e., based at least in part on the adjusted state of the one or more mobile device data objects) access to network application services is denied to the restricted app by the BlackBerry Defendants' UEM by blocking traffic therefrom at a server.

64.     The BlackBerry Defendants advertise that the QNX Car Platform includes security capabilities permitting the use of a self-verifying file system to deny access to files that have changed unexpectedly, filesystem encryption for protecting sensitive or private data, and fine-grain control of system privileges.

65.     Upon information and belief, the BlackBerry QNX Car Platform incorporates security features that include the BlackBerry Defendants' UEM, and also infringes at least claim 1 of the '307 patent.

14

66.     The BlackBerry Defendants' infringement of the '307 patent has injured and will continue to injure MobileIron unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further use of methods and systems that come within the scope of the '307 patent.

67.     Upon information and belief, the BlackBerry Defendants have had actual notice of, and actual knowledge of, at least the '307 patent since at least February 26, 2020, when MobileIron provided the BlackBerry Defendants with written notice of their infringement of the patent.

68.     The BlackBerry Defendants' UEM is advertised as being scalable up to 25,000 devices per server and 150,000 devices per domain, and can be deployed either on premise or within the Cloud.  The Blackberry Defendants' UEM is not a staple article or a commodity of commerce suitable for a non-infringing use of the '307 patent.  The BlackBerry Defendants' UEM is especially made for an infringing use of the '307 patent, and in combination with BlackBerry Defendants' knowledge of the '307 patent and further knowledge that the BlackBerry Defendants' customers infringe the '307 patent when they implement the UEM on their mobile devices, the BlackBerry Defendants are contributory infringers of the '307 patent.

69.     The BlackBerry Defendants have been and are aware that the normal and customary use of the BlackBerry Defendants' UEM will infringe the '307 patent.  The BlackBerry Defendants, through the dissemination of technical and product literature, online instruction, advertising, and customer support regarding the BlackBerry Defendants' UEM, intentionally encourage the BlackBerry Defendants' customers to infringe the '307 patent.  The BlackBerry Defendants therefore are liable for induced infringement of the '307 patent.

70.     The Blackberry Defendants' infringement of the '307 patent has been and continues to be willful and deliberate as the BlackBerry Defendants have acted in an objectively reckless manner in view of the high likelihood that their acts constituted infringement of the '307 patent, and with full knowledge of MobileIron's rights in the '307 patent.

71.     For the reasons stated herein, MobileIron is entitled to enhanced damages pursuant to 35 U.S.C. § 284, and attorneys' fees and costs pursuant to 35 U.S.C. § 285.

## COUNT IV

### (Infringement of U.S. Patent No. 10,038,598)

72.     MobileIron incorporates by reference the allegations set forth in paragraphs 1 through 71 of this Complaint as though set forth in full herein.

73.     The BlackBerry Defendants and their customers have infringed the claims, directly, indirectly, and/or via the doctrine of equivalents, including at least claim 18, of the '598 patent, through, among other activities, the sale, the offering for sale, the making, the having made, the use, the importation and the exportation of the BlackBerry Defendants' Blackberry Enterprise BRIDGE ("Enterprise BRIDGE").

74.     Upon information and belief, the BlackBerry Defendants' Enterprise BRIDGE performs a method comprising receiving, from a device management server, an indication to perform an action that requires access to a privileged user space of a physical device.  According to the BlackBerry Defendants, the BlackBerry Enterprise BRIDGE "is a Microsoft Intune app that is enabled for BlackBerry Dynamics. It allows you to securely view, edit, and save documents using Intune managed Microsoft apps, such as Microsoft Word, Microsoft PowerPoint, Microsoft Excel, Microsoft Teams, Microsoft OneNote, and Yammer in BlackBerry Dynamics on iOS and Android devices."  BlackBerry Enterprise BRIDGE, Administration Guide (v. 2.1) at 5.

75.     Upon information and belief, the BlackBerry Defendants' Enterprise BRIDGE uses a native device management service, wherein the native device management service is configured to perform only predefined functions without access to the privileged user space. Upon information and belief, a mobile platform employing Enterprise BRIDGE uses a native device management service, wherein the native device management service is configured to perform only predefined functions without access to the privileged user space.

76.     Upon information and belief, the BlackBerry Defendants' Enterprise BRIDGE uses a mobile device management (MDM) bridge service to perform the action, wherein the MDM bridge service runs in a security context that enables the service to operate in the privileged user space.  The BlackBerry Defendants' Administration Guide for Enterprise BRIDGE provides

16

a data flow that "shows how to share documents that are received as email attachments in BlackBerry Work or saved to the Local Docs folder or an Enterprise remote Docs location to Intune managed apps on Android and iOS devices when the Enterprise BRIDGE app is install led."  BlackBerry Enterprise BRIDGE, Administration Guide (v. 2.1) at 9.  One example from the BlackBerry Defendants' Enterprise BRIDGE Administration Guide describes the following steps:

1. The user downloads and previews a file received as an email attachment in BlackBerry Work.

2. If the Microsoft Intune app protection policy profile allows it, the device sends a copy of the file using the AppKinetics Transfer File service through secured channels to the Enterprise BRIDGE app.

3. The Enterprise BRIDGE app securely sends a copy of the file over an Intune protected channel to the Intune managed app (for example, Microsoft Word). The Enterprise BRIDGE app deletes the copy of the file within the Enterprise BRIDGE app after the file transfer is complete.

4. The user performs the following actions:

   a. Saves a copy of the file in an Intune protected area of the Intune managed app.

   b. Modifies the file as required and saves the updated file.

5. The device sends a copy of the file back to the Enterprise BRIDGE app over the Intune protected channel.

6. The Enterprise BRIDGE app sends the copy of the file to BlackBerry Work using the AppKinetics Transfer File service through secured channels to attach to the original or a new email or to save to the Local Docs folder or an Enterprise remote Docs location. The Enterprise BRIDGE app deletes the copy of the file within the Enterprise BRIDGE app after the file transfer is complete.

*Id*. at 10.

77.     Thus, upon information and belief, the BlackBerry Enterprise BRIDGE app is a mobile device management (MDM) bridge service that performs actions, such as modifying and saving files.  The Enterprise BRIDGE (i.e., the MDM bridge) service securely exchanges data/files with and Intune managed app (e.g., Microsoft Word), i.e., runs in a security context that enables the service to operate in the privileged user space.

78.     The BlackBerry Defendants' infringement of the '598 patent has injured and will continue to injure MobileIron unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further use of methods and systems that come within the scope of the '598 patent.

79.     Upon information and belief, the BlackBerry Defendants have had actual notice of,

17

1   and actual knowledge of, at least the '598 patent since at least February 26, 2020, when

2   MobileIron provided the BlackBerry Defendants with written notice of their infringement of the

3   patent.

4       80.    The BlackBerry Defendants' Enterprise BRIDGE is advertised as being a

5   BlackBerry Dynamics-enabled and Microsoft® Intune-protected app that provides a secure

6   bridge between BlackBerry Dynamics apps such as BlackBerry Work and Intune-managed

7   mobile apps such as Microsoft Office.  The Blackberry Defendants' Enterprise BRIDGE is not a

8   staple article or a commodity of commerce suitable for a non-infringing use of the '598 patent.

9   The BlackBerry Defendants' Enterprise BRIDGE is especially made for an infringing use of the

10  '598 patent, and in combination with BlackBerry Defendants' knowledge of the '598 patent and

11  further knowledge that the BlackBerry Defendants' customers infringe the '598 patent when they

12  implement the Enterprise BRIDGE on their mobile devices, the BlackBerry Defendants are

13  contributory infringers of the '598 patent.

14      81.    The BlackBerry Defendants have been and are aware that the normal and

15  customary use of the BlackBerry Defendants' Enterprise BRIDGE will infringe the '598 patent.

16  The BlackBerry Defendants, through the dissemination of technical and product literature, online

17  instruction, advertising, and customer support regarding the BlackBerry Defendants' Enterprise

18  BRIDGE, intentionally encourage the BlackBerry Defendants' customers to infringe the '598

19  patent.  The BlackBerry Defendants therefore are liable for induced infringement of the '598

20  patent.

21      82.    The Blackberry Defendants' infringement of the '598 patent has been and

22  continues to be willful and deliberate as the BlackBerry Defendants have acted in an objectively

23  reckless manner in view of the high likelihood that their acts constituted infringement of the '598

24  patent, and with full knowledge of MobileIron's rights in the '598 patent.

25      83.    For the reasons stated herein, MobileIron is entitled to enhanced damages pursuant

26  to 35 U.S.C. § 284, and attorneys' fees and costs pursuant to 35 U.S.C. § 285.

27

28

## COUNT V

### (Declaratory Judgment of Non-Infringement of U.S. Patent Nos. 7,372,961; 8,442,489; 9,270,682; and 9,282,099)

84.     MobileIron incorporates by reference the allegations set forth in paragraphs 1 through 83 of this Complaint as though set forth in full herein.

85.     This is a claim for declaratory judgment of non-infringement of any claims of the '961, '489, '682, and '099 patents.

86.     A true and accurate copy of the '961 patent is attached to this Complaint as Exhibit G.  A true and accurate copy of the '489 patent is attached to this Complaint as Exhibit H.  A true and accurate copy of the '682 patent is attached to this Complaint as Exhibit I.  A true and accurate copy of the '099 patent is attached to this Complaint as Exhibit J.

87.     MobileIron does not directly, contributorily, or by inducement, infringe any claims of the '961, '489, '682, and '099 patents, either literally or under the doctrine of equivalents.

88.     The manufacture, importation, use, sale, or offer for sale of any of MobileIron products or services in the United States does not directly infringe, contributorily infringe, or induce infringement of any claims of the '961, '489, '682, and '099 patents, either literally or under the doctrine of equivalents.

89.     Absent a declaration of non-infringement, the BlackBerry Defendants will continue to wrongfully assert the '961, '489, '682, and '099 patents against MobileIron and others, including MobileIron's customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause MobileIron irreparable injury and damage.

90.     A judicial determination on the disputes recited herein is necessary and appropriate at this time so that the parties may ascertain their respective rights and obligations with respect to the '961, '489, '682, and '099 patents and any past, present or future manufacture, use, importation, distribution, sale, or offer for sale of MobileIron products or services.

## COUNT VI

### (Declaratory Judgment of Surrender of U.S. Patent No. 8,005,469)

91.     MobileIron incorporates by reference the allegations set forth in paragraphs 1 through 90 of this Complaint as though set forth in full herein.

92.     This is a claim for declaratory judgment that the '469 patent has been surrendered under 35 U.S.C. § 252, is no longer in effect, and, thus, cannot be asserted by BlackBerry against MobileIron.

93.     A true and accurate copy of the '469 patent is attached to this Complaint as Exhibit K.

94.     The '469 patent was reissued as U.S. Patent No. RE44,746 on February 4, 2014. A true and accurate copy of the Reissue '746 patent is attached to this Complaint as Exhibit L. Pursuant to 35 U.S.C. § 252, the '469 patent was surrendered as of the date of issuance of the Reissue '746 patent and is no longer in effect.  Accordingly, as a matter of law, BlackBerry cannot assert infringement of, and MobileIron cannot infringe, any claim of the '469 patent.

95.     Absent a declaration that the '469 patent is surrendered, the BlackBerry Defendants will continue to wrongfully assert the '469 patent against MobileIron and others, including MobileIron's customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause MobileIron irreparable injury and damage.

96.     There is a substantial controversy between MobileIron and the BlackBerry Defendants with respect to the '469 patent sufficient to warrant the issuance of a declaratory judgment.  A judicial determination on the disputes recited herein is necessary and appropriate at this time so that the parties may ascertain their respective rights and obligations with respect to the '469 patent and any past, present or future manufacture, use, importation, distribution, sale, or offer for sale of MobileIron products or services.

## COUNT VII

### (Declaratory Judgment of Patent Misuse)

97.     MobileIron incorporates by reference the allegations set forth in paragraphs 1 through 96 of this Complaint as though set forth in full herein.

20

98.     While the BlackBerry Defendants in their correspondence dated August 26, 2019 specifically accused MobileIron of infringing each of the '469, '084, '099, Reissue '746, '489, '682, '961, '045, '175, and '769 patents, they did not provide any details with that correspondence as to why they contended each of said patents is infringed by any MobileIron products or services.  The letter dated August 26, 2019 also touted the size and breadth of BlackBerry's patent portfolio, and noted that the "patents identified in this letter are merely illustrative examples" of patents relevant to MobileIron's business and did not represent the totality of BlackBerry's portfolio.

99.     The '469 patent has been surrendered pursuant to 35 U.S.C. § 252, and is not enforceable as a matter of law.  BlackBerry has not asserted, in communications not shielded by confidentiality, that it will not assert the '469 patent.

100.    MobileIron responded to BlackBerry's letter dated August 26, 2019 in a letter dated February 26, 2020, attached hereto as Exhibit M.  Notably, BlackBerry did not file suit against MobileIron during the nearly six-month period between BlackBerry's original letter, and MobileIron's written response to its initial allegations.  MobileIron responded to BlackBerry's allegations in its August 26, 2019 letter, and asserted that certain BlackBerry products infringe claims of five of MobileIron's patents.[4]

101.    Scarcely ten days after MobileIron had responded to the BlackBerry Defendants' letter dated August 26, 2019, the BlackBerry Defendants responded, sending a letter dated March 9, 2020 (Exhibit F).   In that letter, the BlackBerry Defendants reiterated their previous contentions and identified 32 additional patents that MobileIron purportedly infringes.  Similar to their August 26, 2019 letter, the BlackBerry Defendants did not provide any details in or with the March 9, 2020 letter as to why they contended each of said patents is infringed by any MobileIron products or services.  Further, with respect to the 32 newly identified patents, the BlackBerry Defendants did not even identify in its correspondence any specific MobileIron products or

---

[4] In Exhibit M, U.S. Patent No. 8,359,016 was incorrectly identified as U.S. Patent No. 8,519,016.  The '016 patent, however, was correctly identified by title, and as a patent that MobileIron had previously asserted against Good Technology Corporation in litigation.  Good Technology Corporation was acquired by the BlackBerry Defendants in 2015.

services that allegedly infringed any claim of the 32 patents.  BlackBerry reiterated that these patents, too, were merely illustrative of relevant patents in its portfolio, and were not intended to convey the full scope of BlackBerry's portfolio.

102.    The BlackBerry Defendants' allegations in their correspondence dated August 26, 2019 that one or more of the patents identified in said correspondence are infringed by MobileIron's products and services is objectively baseless, as the BlackBerry Defendants have no reasonable expectation that any such infringement of one or more patents identified in its letters has occurred.  In fact, at least one patent has been statutorily surrendered and cannot be enforced as a matter of law.  For other patents, the BlackBerry Defendants lack any basis whatsoever for their infringement accusations, as the BlackBerry Defendants know that no MobileIron product or service performs every limitation of any claim of those patents.  These assertions are simply part of an effort by Blackberry to create a threat to MobileIron that it will engage in a massive and meritless series of patent infringement assertions to try to extort licensing fees from MobileIron.

103.    The BlackBerry Defendants' allegations in their correspondence dated March 9, 2020 (Exhibit F) that one or more of the patents identified are infringed by MobileIron's products and services are objectively baseless, as the BlackBerry Defendants have no reasonable expectation that any such infringement has occurred and instead are just a laundry list of patents to create an apprehension by MobileIron in order for Blackberry to seek extortionate licensing fees.

104.    The BlackBerry Defendants in their August 26, 2019 and March 9, 2020 correspondence indiscriminately reference and assert their entire patent portfolio, directed to old and inapplicable security technology, based on allegations of infringement directed to a few broadly written claims against a broad range of potential but unidentified products without actually assessing whether such products actually infringe.

105.    Upon information and belief, the BlackBerry Defendants—including through the assertion of objectively baseless allegations of infringement of each of the patents referenced in their August 26, 2019 and March 9, 2020 correspondence—intend to leverage the cost to MobileIron and other parties to respond to numerous meritless claims of infringement in order to

1  raise prices and costs to parties engaged in the UEM, security, and mobile device services

2  markets, resulting in harm to competition.

3      106.   The effect of the BlackBerry Defendants' actions in alleging infringement by

4  MobileIron of each of the patents referenced in the BlackBerry Defendants' August 26, 2019 and

5  March 9, 2020 correspondence is to impermissibly broaden, with anticompetitive effects, the

6  physical and temporal scope of each of the patents referenced in the August 26, 2019 and March

7  9, 2020, including (but not limited to) the '469 patent, including by raising prices through the

8  imposition of unfair royalties and license demands, and by forcing parties like MobileIron, who

9  refuse to take a license on the terms offered by the BlackBerry Defendants, to expend money to

10 investigate and defend against spurious and baseless claims of infringement.

11     107.   Upon information and belief, the BlackBerry Defendants use the size of their

12 patent portfolio, and the concomitant disadvantageous cost to any licensee target like MobileIron

13 to evaluate the actual merits of BlackBerry's allegations arising from such portfolio, to illegally

14 and improperly force the licensee targets to accept a patent license to all of the patents in the

15 BlackBerry Defendants' patent portfolio, including the legally unenforceable '469 patent, rather

16 than expending substantial time and money investigating and responding to all of BlackBerry's

17 meritless assertions.  In doing so, the BlackBerry Defendants have improperly expanded the

18 physical and temporal scope of one or more of the patents in the BlackBerry Defendants'

19 portfolio, including (but not limited to) the legally unenforceable '469 patent.

20     108.   MobileIron has been harmed by the BlackBerry Defendants' illegal and improper

21 attempt to expand the physical and temporal scope of the patents referenced in the August 26,

22 2019 and March 9, 2020 correspondence from the BlackBerry Defendants to MobileIron and, as a

23 result, has incurred substantial business and other costs.

24                    **<u>COUNT VIII</u>**

25                 **<u>(Attempted Civil Extortion)</u>**

26     109.   MobileIron incorporates by reference the allegations set forth in paragraphs 1

27 through 108 of this Complaint as though set forth in full herein.

28     110.   The Blackberry Defendants are liable for attempted civil extortion.  The

23

Blackberry Defendants have threatened and continue to threaten to block MobileIron's lawful business operations through its abusive licensing letters and meritless accusations of infringement.

111.     The BlackBerry Defendants, in public filings, acknowledge the significant role that patent licensing currently plays, and has played in the past, for its business.  For example, in BlackBerry Ltd.'s most recent annual report, it states, "The patent portfolio continues to provide a competitive advantage in the Company's core product areas as well as providing leverage in the development of future technologies and licensing programs in both core and adjacent vertical markets."  *See* Form 10-K of Blackberry, Ltd. for the Fiscal Year Ended February 29, 2020, at 7.[5] BlackBerry Ltd. further acknowledges that it "is also monetizing its patent portfolio through outbound patent licensing," and that changes in patent law, or in its ability to discovery infringement, can cause a decline in its licensing revenue.  *Id.* at 16.  A decline in BlackBerry Ltd.'s patent licensing revenue would, in turn, cause a decline in overall revenue.  At the same time, BlackBerry Ltd.'s public statements recognize that litigation "could result in substantial costs and diversion of management resources, either of which could harm the Company's business, financial condition and results of operations, and there is no assurance that the Company will be successful."  *Id.*  Therefore, the BlackBerry Defendants have every incentive to threaten baseless allegations of patent infringement, such as those that the BlackBerry Defendants have levelled at MobileIron, in an attempt to extract licenses on the cheap.

112.     For example, since February 4, 2014, the BlackBerry Defendants have had no lawful right to assert alleged infringement of the surrendered '469 patent, yet they threatened MobileIron and insisted that MobileIron take a license to the '469 patent along with a large number of other patents.  Furthermore, the Blackberry Defendants have no objectively or subjectively reasonable basis for asserting that MobileIron infringes any claims of the '961, '489, '682, and '099 patents.

113.     MobileIron has an objectively reasonable fear of the Blackberry Defendants

---

[5] https://www.blackberry.com/content/dam/blackberry-com/Documents/pdf/financial-reports/2020/q4y2020/BlackBerry-Annual-Report%2010-K%20.pdf (last visited June 28, 2020).

asserting infringement against MobileIron, and continuing to assert additional patents against MobileIron, at least based on their correspondence dated August 26, 2019 and March 9, 2020.

114.    The BlackBerry Defendants are primarily engaged in the business of selling, licensing and leasing goods and services, including patents and patented technology related to unified endpoint mobility and enterprise mobility management for mobile devices.

115.    The BlackBerry Defendants' correspondence dated August 26, 2019 and March 9, 2020, was directed to MobileIron, a business competitor of the Blackberry Defendants, and constitutes a representation of fact about how MobileIron's business, goods and services allegedly infringe the BlackBerry Defendants' patents.  The BlackBerry Defendants' August 26, 2019 and March 9, 2020 correspondence was made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the BlackBerry Defendants goods or services, including, in particular, a license to the BlackBerry Defendants' patent portfolio.

116.    The BlackBerry Defendants viewed MobileIron, the intended audience of the BlackBerry Defendants' August 26, 2019 and March 9, 2020 correspondence, as an actual or potential buyer or customer.  In particular, the BlackBerry Defendants approached MobileIron as a potential licensee of the BlackBerry Defendants' patent portfolio.

117.    The Blackberry Defendants have at all times known that their demands for money from MobileIron for alleged infringement of numerous patents are both objectively and subjectively baseless, but Defendants have continued their acts of attempted extortion unabated. These acts began in 2019 with the Blackberry Defendants' letter, identifying ten patents allegedly infringed by MobileIron, and then, shortly after MobileIron responded to BlackBerry's letter, the acts continued into 2020 as the Blackberry Defendants added 32 patents to their initial threat, thereby maintaining a cloud of false claims of "infringement" over MobileIron.  In both of its communications, the BlackBerry Defendants tout the that the patents "are merely illustrative examples" of the BlackBerry portfolio and "are not intended to convey the totality of the relevant patents in BlackBerry's portfolio."  The lack of merit in BlackBerry's assertions is evident on its face, as Blackberry did not provide even one claim chart as an attachment to either of its patent "notices," which would have allowed MobileIron to share BlackBerry's contentions with

company personnel and experts, and to thereby evaluate the merits of such claims.   The Blackberry Defendants could at any time cease their unlawful and fraudulent activities and allow MobileIron to proceed unmolested.  Instead, the Blackberry Defendants have continued to hold MobileIron captive with baseless assertions of infringement in the hopes that MobileIron will take an exorbitant and unjustified license to the Blackberry Defendant's patents.

118.    The Blackberry Defendants' ongoing acts of attempted extortion have damaged MobileIron, including, but not limited to, hindering MobileIron's progress towards realizing the full potential of its business and causing MobileIron to expend significant legal fees and other costs to address the Blackberry Defendants' misconduct.

119.    MobileIron seeks recovery for its losses caused by Blackberry's ongoing attempted extortion.

120.    The Blackberry Defendants' extortionate behavior against MobileIron and others has been pursued intentionally, willfully, and with malice, justifying an award of attorneys' fees and punitive damages to discourage any such further conduct by the Blackberry Defendants.

## COUNT IX

### (Declaratory Judgment of Unclean Hands)

121.    MobileIron incorporates by reference the allegations set forth in paragraphs 1 through 120 of this Complaint as though set forth in full herein.

122.    This is a claim for declaratory judgment that the BlackBerry Defendants have unclean hands and, therefore, cannot obtain relief against MobileIron for alleged infringement of any of the patents identified in their August 26, 2019 and March 9, 2020 correspondence.

123.    As detailed throughout this Complaint, the BlackBerry Defendants have improperly purported to provide "notice" that MobileIron infringes the patents identified in the August 26, 2019 and March 9, 2020 correspondence, based on objectively and subjectively baseless claims of infringement, in an effort to force MobileIron to take expensive and extortionate license fees for patents that it does not need.  The BlackBerry Defendants thus have unclean hands, and all of the patents identified in the BlackBerry Defendants' August 26, 2019 and March 9, 2020 correspondence are unenforceable as against MobileIron.

26

124.   Absent a declaration that the patents identified in the BlackBerry Defendants'
August 26, 2019 and March 9, 2020 correspondence are unenforceable due to the BlackBerry
Defendants' unclean hands, the BlackBerry Defendants will continue to wrongfully assert those
patents against MobileIron and others, including MobileIron's customers, in violation of the laws
and contrary to the public policy of the United States, and will thereby continue to cause
MobileIron irreparable injury and damage.

125.   A judicial determination on the disputes recited herein is necessary and appropriate
at this time so that the parties may ascertain their respective rights and obligations with respect to
the patents identified in the BlackBerry Defendants' August 26, 2019 and March 9, 2020
correspondence, as well as any other patents BlackBerry would require MobileIron to license, and
any past, present or future manufacture, use, importation, distribution, sale, or offer for sale of
MobileIron products or services.

## **COUNT X**

### **(Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*)**

126.   MobileIron incorporates by reference the allegations set forth in paragraphs 1
through 125 of this Complaint as though set forth in full herein.

127.   The BlackBerry Defendants have violated California Business & Professions Code
section 17200, *et seq.* ("UCL") by engaging in unfair and unlawful conduct against MobileIron.
Specifically, the BlackBerry Defendants have attempted, and continue to attempt, to extort
payment from MobileIron for patents that the BlackBerry Defendants have no objectively or
subjectively reasonable for believing are infringed by MobileIron.

128.   In so doing, the BlackBerry Defendants have prevented MobileIron from operating
its business without fear of additional allegations that MobileIron infringes the BlackBerry
Defendants' patents.  Additionally, MobileIron has expended significant amounts of money to
investigate and address the BlackBerry Defendants' unfair and unlawful accusations of
infringement.  The BlackBerry Defendants' conduct has thus damaged MobileIron as set forth
herein.

129.   The BlackBerry Defendants, by their actions, have irreparably injured MobileIron.

27

1   Such irreparable injury will continue unless the BlackBerry Defendants are preliminarily and

2   permanently enjoined by this Court from further violation of MobileIron's rights, for which

3   MobileIron has no adequate remedy at law.

### PRAYER FOR RELIEF

5        WHEREFORE, Plaintiffs pray for the following:

6        1.      Entry of judgment in favor of MobileIron and against the BlackBerry Defendants

7   as follows:

8                a.      An award of damages adequate to compensate MobileIron for the

9                        infringement, directly, indirectly, and/or by the doctrine of equivalents, that

10                       has occurred as a result of each of the BlackBerry Defendants' acts of

11                       infringement of the '016, '120, '307, and '598 patents, which acts of

12                       infringement have been willful, together with prejudgment interest from

13                       the date that the BlackBerry Defendants' infringement of each of the '016,

14                       '120, '307, and '598 patents began;

15               b.      A declaration that MobileIron does not infringe any claim of the '961,

16                       '489, '682, and '099 patents;

17               c.      A declaration that the '469 patent has been surrendered and is no longer in

18                       effect as a matter of law;

19               d.      A declaration that any patents that the BlackBerry Defendants may assert

20                       against MobileIron are unenforceable due to the BlackBerry Defendants'

21                       unclean hands;

22               e.      An award of damages to compensate MobileIron for the BlackBerry

23                       Defendants' attempted civil extortion; and

24               f.      An award of restitution to MobileIron for the BlackBerry Defendants'

25                       violation of California Business & Professions Code § 17200.

26       2.      Entry of preliminary and permanent injunctions enjoining the BlackBerry

27   Defendants, their officers, agents, servants, employees, licensees and attorneys and those persons

28   in active concert or participation with them and all others in privity therewith from: (a) initiating

28

1    or prosecuting any lawsuit or proceeding placing at issue the right of MobileIron, its customers,

2    licensees, successors, assigns and all others in privity therewith to make, use, sell, offer for sale or

3    import MobileIron's products and services; (b) interfering with or threatening to interfere with the

4    manufacture, sale, offer for sale, use or importation of MobileIron's products and services by

5    MobileIron, or any of its customers, licensees, dealers, agents, servants, or employees, or any

6    prospective or present sellers, dealers, or users of MobileIron's products and services, and all

7    others in privity therewith, with respect to all patents identified in the BlackBerry Defendants'

8    August 26, 2019 and March 9, 2020 correspondence and any other patents that the BlackBerry

9    Defendants may assert against MobileIron; and (c) making any claim to any person or entity that

10   MobileIron's products infringe any of the patents identified in the BlackBerry Defendants'

11   August 26, 2019 and March 9, 2020 correspondence or any other patents that the BlackBerry

12   Defendants may assert against MobileIron, said injunction to be made permanent following trial;

13         3.      An award of MobileIron's attorneys' fees and costs, including at least because this

14   is an exceptional case under 35 U.S.C. § 285;

15         4.      An award of punitive damages; and

16         5.      Such other further relief as the Court deems appropriate.

17                            **<u>JURY DEMAND</u>**

18      Plaintiff MobileIron, Inc. hereby demands trial by jury on all issues triable to a jury.

19

20    Dated: June 29, 2020                      Respectfully submitted,

21                              By: /s/ *I. Neel Chatterjee*

22                                I. Neel Chatterjee
                                  Rachel M. Walsh

23                                Monte M.F. Cooper
                                  Andrew S. Ong

24                                Daniel R. Mello Jr.
                                  GOODWIN PROCTER LLP

25                                Attorneys for Plaintiff

26                                MOBILEIRON, INC.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on June 29, 2020.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on June 29, 2020, in Redwood City, California.

*/s/ I. Neel Chatterjee*
I. Neel Chatterjee
